UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO ALVAREZ,<br><br>          Petitioner,<br><br>v.<br><br>JAMES ROBERTSON,<br><br>          Respondent. | Case No.  19-cv-08383-VC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Pedro Alvarez has filed a pro se petition for a writ of habeas corpus under 28 U.S.C Section 2254 challenging the validity of his state criminal conviction. Alvarez asserts the following claims: (1) improper consolidation of cases; (2) insufficient evidence; (3) *Miranda* violation; and (4) prosecutorial misconduct. The petition is denied.

## PROCEDURAL BACKGROUND

On May 23, 2016, the Monterey County district attorney filed an amended information against Alvarez involving three prison incidents. The charges were three counts of custodial possession of a weapon, two counts of assault by a state prisoner, and one count of attempted murder. Dkt. No. 13-1 at 2-5. Regarding the custodial weapons counts, the information alleged that Alvarez personally used a deadly weapon. *Id.* It also alleged that Alvarez had suffered four previous strike convictions. *Id.*

On May 26, 2016, the jury found Alvarez guilty of all charges and found true the allegation that he had committed the attempted murder with premeditation and for one of the allegations that he personally used a deadly weapon. Dkt. No. 13-1 at 6-11. Alvarez admitted the four prior strike convictions. Dkt. No. 13-2 at 10-12. On July 27, 2016, the trial court sentenced Alvarez to 52 years to life. Dkt. No. 13-1 at 12-13.

The California Court of Appeal affirmed the judgment. *See People v. Alvarez*, 2018 WL

1101494 (Cal. App. Mar. 1, 2018) (unpublished). On June 13, 2018, the California Supreme Court summarily denied review. Dkt. No. 13-8. On December 23, 2019, Alvarez filed this timely federal habeas petition.

## FACTUAL BACKGROUND

The case concerns three separate incidents at Salinas Valley State Prison, for which Alvarez was tried together. On April 23, 2014, Officer Gudino was patrolling the prison yard when an announcement was made for the inmates to lie on the ground. Gudino saw two inmates (later identified as Alvarez and Perez) punching a third inmate (later identified as Acosta) in the face and upper torso. Acosta appeared to be defending himself. After attempting to disperse the three inmates, Gudino saw Perez stabbing Acosta in the back with an object. Gudino did not see Alvarez with a weapon. Gudino later saw Perez toss his weapon and lay on the ground. Officer Curiel, who also observed the fight on the yard, described seeing two inmates making stabbing motions toward a third inmate. Officer Curiel did not see an object in the inmates' hands and did not see the inmates throw anything. After the inmates were separated, Acosta appeared unconscious and medical staff attempted to stop his bleeding. Two inmate-manufactured weapons were found near the area. Photographs taken of Alvarez showed dried blood on his arm and no observable injuries other than a small cut on his knuckle. Acosta testified at trial but refused to provide any information about the events on April 23.

The second incident occurred on November 3, 2015. Officer Thich was on duty that evening conducting cell checks. Thich arrived at Alvarez's cell which he shared with inmate Santana. Through the cell window, Thich saw Alvarez standing over Santana in a straddle position. He observed Alvarez choking Santana, who lay in a pool of blood with a bleeding wound on his neck. Alvarez was bleeding on the side of his face and had scrapes on his head. Alvarez also had blood on his clothing, hands, and knees. Thich did not see any object in Alvarez's hands, did not see Alvarez throw anything, and did not see a blood-soaked towel in the cell. Thich testified that Alvarez and Santana were alone in the cell for about an hour before he arrived on his security check. Photographs taken of Santana at the hospital showed puncture

2

wounds on his body, a slice wound on his neck, and defensive wounds.

Officer Peffley investigated the cell the following day. He noted that a special lock had been placed on the cell after Alvarez and Santana were removed from the cell, which could only be opened by investigative staff. Photographs taken during Peffley's investigation showed a large puddle of blood in the center of the cell, blood stains around the cell, and a towel saturated with blood. A thorough search of the cell was conducted, and no weapon was found. The following day, November 5, Peffley was notified that a weapon was found under the lower bunk in the cell. Peffely testified that the weapon was made of steel and plastic and was sharp enough to puncture and kill someone. Peffley was unsure how the weapon got into the cell, but believed it was possible that the weapon was tossed under the cell door and tossed back into the cell by another inmate the next morning.

The third incident took place on November 17, 2015, when Alvarez was being transferred between administrative segregation (ad seg) units. Officer Schlitz strip-searched Alvarez and searched his property, including two Bibles. Schlitz used a metal detector and found a weapon in the binding of one of the Bibles. Schlitz then found a weapon in the binding of the second Bible. After Schlitz found the second weapon, he said in a "kind of joking . . . [and] spontaneous" manner, "Hey, how many of these things you got? How many weapons have you got?" Schlitz testified that Alvarez responded, "Just the two." When Schlitz found the weapons, Alvarez was in a holding cell in front of Schlitz.

Alvarez testified at trial about the facts of the three incidents. Regarding the April 23 incident, he explained that he was walking in the yard on the track when a fight broke out next to him between Perez and Acosta. Alvarez said he was attacked and fought back. He testified that he did not observe any objects in their hands, and he did not have a weapon.

As to the November 3rd incident, Alvarez denied stabbing Santana and denied having a weapon. He explained that he and Santana had been cellmates for two or three months without incident. He testified as follows: on the evening of November 3, Santana returned to the cell after making a phone call. Alvarez saw blood on the front of Santana's shirt and tried to see what

happened, but Santana would not allow Alvarez near him. Santana continued to bleed for a few minutes and then fell to the ground. Alvarez went to see what was happening and tried to move Santana who pushed Alvarez away. Alvarez then grabbed a towel and put it around Santana's neck to stop the bleeding, while standing over Santana. They remained that way until the officers arrived. Alvarez did not call out to the officers when he saw Santana bleeding because he did not yet know what was happening.

Regarding the November 17th incident, Alvarez denied owning the Bibles or the weapons, and denied making the statement to Schlitz about the two weapons. Alvarez testified that while he was being moved between locations, he was handcuffed and was not carrying his property. He stated that when he was moved from the cell with Santana, an inventory was made of all his property. While the inventory had a place to mark religious or other materials, neither section showed that he had two Bibles (although it had the section for books checked off).

## STANDARD OF REVIEW

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This is a highly deferential standard for evaluating state court rulings: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial

and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d*). Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case, the California Court of Appeal is the highest court to have issued a reasoned decision on Alvarez's claims.

## DISCUSSION

### I. Consolidation of Cases

Alvarez claims the trial court erred by granting the prosecution's motion to consolidate the 2014 case about the incident in the yard with the 2015 case about the incident in the cell. The Court of Appeal held that the requirements under Penal Code § 954, the California consolidation statute, were satisfied, and that Alvarez did not show prejudice. *Alvarez*, 2018 WL 1101494, at *6.

The United States Supreme Court has never held that a trial court's consolidation of cases for trial implicates a defendant's due process rights. *See Collins v. Uribe*, 564 Fed. Appx. 343, 343 (9th Cir. 2014) ("The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process." (citing *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010)). The absence of clearly established federal law mandates denial of Alvarez's claim.

In any event, Alvarez has not shown that a due process error occurred. *See Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001) (on habeas review, prisoner must show that consolidation of cases was "fundamentally unfair and hence, violative of due process.") (citation omitted). The evidence in both cases was quite strong, and Alvarez has not adequately explained how putting the two cases together might have allowed the government to obtain a conviction in one case where there was serious potential for an acquittal had it been tried separately.

## II.      Insufficient Evidence

Alvarez argues there was insufficient evidence to support the convictions for assault by a prisoner, attempted murder, and custodial possession of a weapon related to the November 3rd incident in his cell. The California Court of Appeal denied this claim finding support for the verdict, as follows:

> [D]efendant and Santana were the only inmates locked into the cell at 9:15 p.m. About an hour later, CO Thich saw that defendant was straddling Santana and choking him. Defendant was not trying to assist Santana, who was lying in a pool of blood, and defendant did not have a towel in his hands. After defendant was ordered off Santana, Santana was gasping for air. There was a wound on Santana's neck that was actively bleeding. Santana also had another wound on his neck, wounds on the left side of his body, and a defensive wound on his hand. There was a large pool of blood in the cell and blood splatter on a curtain, a fan, a pair of glasses, and the toilet. Defendant, who appeared to have been in a fight, had a significant amount of blood on his hands and knees but no corresponding injuries. Given the length of time that defendant and Santana were alone together in the cell, Santana's extensive injuries, Santana's blood throughout the cell, and the officers' observations of defendant's conduct, there was extremely strong circumstantial evidence that defendant had choked Santana and inflicted the wounds on Santana that were caused by a sharpened instrument.
>
> Defendant contends, however, that the prosecutor presented only evidence that defendant had an opportunity to commit the assault and the attempted murder. He further contends that the prosecutor failed to present evidence of motive or the weapon used to inflict Santana's injuries. We first note that the prosecutor is not required to prove motive, since it is not an element of the crime of attempted murder, assault, or custodial possession of a weapon. Nor is the prosecutor required to produce evidence of the particular weapon used by the perpetrator. Moreover, it is not our role to reweigh or draw contrary inferences from the evidence.

*Alvarez*, 2018 WL 1101494, at *7 (internal citations omitted).

Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis excluded). The reviewing court must presume the trier of fact resolved any conflicts in the evidence in favor of the prosecution and must defer to that

resolution. *Id*. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). The only question is "whether the finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656. The jury, not the court, decides what conclusions should be drawn from evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). The jury's credibility determinations are, therefore, entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Under California law, the elements of assault by a prisoner with a deadly weapon are: (1) the defendant acted with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; (4) when the defendant acted, he had a deadly weapon; and (5) when he acted, the defendant was confined in a state prison. Dkt. No. 13-1 at 22 (jury instruction citing Cal. Pen. Code § 4501). Attempted murder requires the specific intent to commit an unlawful killing of a human being with malice aforethought plus a direct but ineffectual act toward its commission. *People v. Chinchilla*, 52 Cal. App. 4th 683, 690 (1997). The elements of possession of a weapon by a prisoner are: (1) the defendant was confined in a state prison; (2) the defendant possessed a dirk or a dagger; (3) the defendant knew he possessed the dirk or dagger; and (4) the defendant knew that the object was a dirk or dagger and could be used as a stabbing weapon. Dkt. No. 13-1 at 24 (jury instruction citing Cal. Pen. Code § 4502).

The state court's determination that a rational jury could find the elements of these offenses beyond a reasonable doubt was not unreasonable. As to the assault and attempted murder charges, the evidence at trial established that Alvarez and Santana were alone in a locked cell for nearly an hour, Santana suffered multiple near fatal puncture wounds and suffered a significant loss of blood. Thich testified that when he arrived at the cell, he saw Alvarez

straddling and choking Santana, with Santana offering no resistance. Dkt. No. 13-3 at 110-13. Thich did not see Alvarez offering any assistance to Santana. *Id.* at 131-32. He recounted seeing a large pool of blood on the floor, and an open wound on Santana's neck. *Id*. at 113. In contrast, while Alvarez had some minor wounds, they did not look severe enough to have caused the blood on the floor of the cell. *Id*. at 115-17. Other officers confirmed seeing a large pool of blood on the floor, as well as a puncture and slash wound on Santana, and one officer described seeing Santana "on the ground, with his arms open and gasping – it look[ed] like he was gasping for air." *See id*. at 37-42, 45-46, 55, 58. Testimony from a nurse who treated Alvarez after the incident confirmed that the blood on Alvarez's clothing was not caused by corresponding wounds. Dkt. No. 22-23. The nurse was also shown photographs of Santana's wounds and she provided an opinion that several of the wounds could have been fatal, causing an individual to bleed to death. *Id*. at 24-27. Viewing the evidence in the light most favorable to the prosecution, it was reasonable for the state appellate court to conclude that there was sufficient evidence to support the assault and attempted murder convictions beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

As to the weapons charge, although the officers who searched the cell did not find a weapon, the evidence that Santana sustained stabbing and puncture wounds, the large puddle of blood in the cell, and Thich's testimony that he found Alvarez straddling Santana, provided strong circumstantial evidence that Alvarez used a weapon to inflict Santana's wounds. *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) ("Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.") (citation omitted). While the jury could have concluded that Santana was wounded before returning to his cell, it ultimately did not. This Court must defer to that finding. *See Jackson*, 443 U.S. at 326; *Bruce*, 276 F. 3d at 957 (*Jackson*'s standard of review requires a federal habeas court to give a jury's credibility determinations near-total deference).

The state appellate court's rejection of this claim was neither an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts.

### III.    *Miranda* Violation

Alvarez argues that he was in custody when questioned by Officer Schlitz about the Bibles, and because he was not advised of his *Miranda* rights, his subsequent statement — "Just the two" in reference to the number of weapons — should not have been admitted at trial. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The California Court of Appeal rejected this claim finding that while the Supreme Court has extended *Miranda* protections to prison inmates, lower courts have carved out an exception "where the interrogation is conducted under circumstances where no restraint is placed upon the inmate over and above that associated with his prisoner status." *Alvarez*, 2018 WL 1101494, at *7 (citing *People v. Fradiue* 80 Cal.App.4th 15, 19 (2008)). The Court of Appeal considered the circumstances of Alvarez's statement under the four-part test established by the Ninth Circuit in *Cervantes*, which looks to: "the language used to summon the inmate for questioning, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure exerted to detain him" *Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir. 1978). The Court of Appeal concluded that no *Miranda* warning was required:

> As to the first *Cervantes* factor, defendant argues that the questioning in the present case did not occur at his usual cell and he was directed to go to the ad-seg unit. The record does not support his argument. He was not summoned for questioning, but was being transferred from one ad-seg unit to another. This transfer necessitated a routine body and property search prior to entering the second ad-seg unit. Under these circumstances, his encounter with CO Schlitz was merely incidental to ongoing prison activities.

> Defendant argues that the second *Cervantes* factor supports a finding that he was in custody, because the physical surroundings of the interrogation were a "marked change" from his "usual surroundings." He points out that he was escorted while handcuffed, stripped nude, and searched prior to being placed in a cell. However, the restrictions on defendant's freedom of movement were no greater than the usual security measures for ad-seg inmates who were being transferred to another ad-seg unit. Since they were no more restrictive than the surroundings that defendant would have ordinarily experienced in prison, this factor also supports a finding that he was not in custody for *Miranda* purposes.

> Under the third *Cervantes* factor, this court considers the extent to which defendant was confronted with evidence of his guilt. After

9

> CO Schlitz removed the weapons from the Bibles, he asked defendant in a joking and spontaneous manner, "'Hey, how many of these things you got? How many weapons have you got?'" Thus, though defendant observed the evidence of his guilt, the officer's rhetorical questions were neither coercive nor hostile.
>
> As to the final *Cervantes* factor, no additional pressure was exerted to detain defendant other than that associated with a transfer from one ad-seg unit to another.

*Alvarez*, 2018 WL 1101494, at *8-9.

*Miranda*'s safeguards extend to inmates in a prison setting. *Mathis v. United States*, 391 U.S. 1, 4 (1968). But a person's status as an inmate does not automatically constitute "in custody" for *Miranda* purposes. *Howes v. Fields*, 565 U.S. 499, 506-07 (2012). In determining whether an inmate is in custody, "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes*, 565 U.S. at 509; *see also Cervantes*, *supra*, 589 F.2d at 429 (an inmate must establish that the prison officials' conduct would cause "a reasonable person to believe his freedom of movement had been further diminished").

To determine how an inmate would have gauged his freedom of movement, courts must examine "all of the circumstances surrounding the interrogation." *Howes*, 565 U.S. at 509. The relevant factors are: (1) the location of the questioning; (2) its duration; (3) statements made during the interview, including the language used to summon the inmate and the manner in which the interrogation is conducted; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the inmate at the end of questioning. *Id.* at 508, 513-14. The court must also ask the "additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509. "For a person serving a term of incarceration, . . . the ordinary restrictions of prison life, while no doubt unpleasant, are expected and familiar and thus do not involve the same 'inherently compelling pressures' that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station." *Id.* at 511.

The Court of Appeal's rejection of this claim was not objectively unreasonable. Despite being naked and handcuffed in a holding cell, the circumstances of the exchange were part of a routine body search of an inmate being transferred between ad seg units. Alvarez was not specifically summoned for questioning by Schlitz, nor does it appear from the record that Alvarez was being interrogated. Schlitz's remark, even if it could be interpreted as "questioning," was brief, consisting of two short sentences which appeared to be an offhand observation. It was not the kind of remark that necessitated a reply, nor the sort of remark that involves the "inherently coercive pressures . . . of station house questioning" at issue in *Miranda*. *See Howes*, 565 U.S. at 509. Alvarez was not placed in any additional restraint during the exchange and was released into ad seg after the search of his property was completed.

In his traverse, Alvarez argues that he had already been charged with attempted murder at the time he was questioned, and that Schlitz, as an experienced officer with 23 years of experience, should have been aware that his question would elicit an incriminating response. While Alvarez cites to *Stansbury v. California*, 511 U.S. 318 (1994) in support of his argument, that case held that in determining whether an individual is in custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." The key factor is the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted." *Id*. Here, Schlitz's training and knowledge of any criminal charges at the time he spoke with Alvarez are not relevant to the question of whether Alvarez was in "custody" at the time of questioning. Considering the relevant factors in *Howes* and *Cervantes*, the state appellate court did not unreasonably conclude that a *Miranda* warning was not necessary in this case.

### IV.    Prosecutorial Misconduct

Alvarez claims the prosecutor committed multiple acts of misconduct. Under state law, to preserve a claim of prosecutorial misconduct on appeal, defense counsel must object.  *See People v. Mendoza*, 62 Cal. 4th 856, 905 (2016). Because counsel did not object, Alvarez claims that his

counsel was ineffective.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, the defendant must establish two things. First, the defendant must establish "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Second, the defendant must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review, it is not enough for a federal court to find counsel ineffective. The federal court must also find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington*, 562 U.S. at 101.

### A.    Prosecutor's Challenge to Alvarez's Credibility

Alvarez argues that the prosecutor committed misconduct when he told the jury that Alvarez lied on the stand and that his counsel was ineffective in failing to object.

After Alvarez testified that he used a towel to stop Santana's bleeding, the prosecutor asked: "That towel that you saw . . . in the photo, and you're just using that as -- making the stuff up about you using the towel; isn't that correct?" Dkt. No. 24-3 at 68. At closing, the prosecutor argued:

> We toss softballs to see if they'll lie about the small stuff. Blood on Acosta's shorts. And his response was, "I don't know what that is. I don't know if it's blood." I said, "What about those stab wounds to Acosta on the yard?" And he said, "Looked like scratches." Won't answer the rat thing. . . . [I]f somebody is not true in their testimony about something small that really doesn't matter, then, why are they going to tell the truth about things that are really big, like, did you cut this guy's neck? Of course they're not going to tell you the truth. There's bias to lie."

Dkt. No. 24-4 at 25.

The state appellate court concluded that the prosecutor did not commit misconduct:

> Here, there was nothing improper in the prosecutor's question to defendant or his argument to the jury. Given the evidence that defendant and Santana were alone in the cell for almost an hour, the presence of Santana's blood throughout the cell, Santana's extensive injuries, and CO Thich's observations of defendant's conduct, it could reasonably be inferred that defendant's testimony was not credible. Thus, the prosecutor's question challenging defendant's credibility was based on the facts in the record. As to the prosecutor's argument, he was urging the jury to determine whether defendant was credible as to certain portions of his testimony and thus determine whether he was credible as to the central issues in the case. The prosecutor did not base either the question or his argument on facts outside the record or his personal belief. Since there was no misconduct, trial counsel was not ineffective when he did not object to either the question or this portion of the prosecutor's argument.

*Alvarez*, 2018 WL 1101494, at *13.

Under federal law, "a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of [government] witnesses," but, on the other hand, "the prosecution must have reasonable latitude to fashion closing arguments." *United States v. Moreland*, 622 F.3d 1147, 1161 (9th Cir. 2010). Therefore, it is "neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand." *United States v. Phillips*, 704 F.3d 754, 766 (9th Cir. 2012). In particular, it is proper for the prosecutor to refer to a defendant's lies if he is "commenting on the evidence and asking the jury to draw reasonable inferences." *Id.*; *United States v. Rue,* 88 F.3d 1538, 1548 (9th Cir. 1996) (finding no misconduct from prosecutor's repeated references to defendant's alleged lies: "the law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom.") (citation omitted).

Here, while the prosecutor frequently commented on Alvarez's credibility, he did so in terms of the evidence presented at trial. Thich testified that he saw Alvarez choking Santana and recalled seeing blood throughout the cell. He also testified that he did not see Alvarez helping Santana or using a towel to stop the bleeding. After Alvarez testified that he assisted Santana and used a towel to stop the bleeding, the prosecutor could properly question if Alvarez created this story to explain away the incriminating evidence. As to the closing argument, considering the conflicting evidence at trial, it was not improper for the prosecutor to urge the jury to judge

Alvarez's credibility. *See United States v. Trevino*, 419 F.3d 896, 902 (9th Cir. 2005) (where

veracity of various testimony is at issue, proper to argue one side is not telling the truth).

Because the prosecutor's statements were not improper, any objection by Alvarez's counsel

would have lacked merit. Counsel's failure to raise a meritless objection does not support a

finding of ineffective assistance of counsel. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.

1996) ("[T]he failure to take a futile action can never be deficient performance.").

### B.  Prosecutor's Opinion About Inmates' Credibility

Alvarez asserts that the prosecutor committed misconduct by arguing that Alvarez was

not credible because prison inmates are dishonest, and that defense counsel was ineffective in

failing to object.

During closing, the prosecutor argued:

> Six prior felony convictions. And the reason we tell you about that
> is not to say anything to do with whether he's a bad person. It's for
> the truth. Think about people who have been convicted of felonies.
> Are they people that you're likely to trust, or are they people that are
> going to tell you the truth? That's something for you to decide. I'm
> not saying, automatically, people who are felons are going to lie to
> you about things, but if they're committing "crimes of moral
> turpitude," we call it, that do wrong, then lying seems to be in the
> scheme of things, probably pretty light. When you're -- if you're
> using semi-automatic weapons to assault people, lying about
> something, that's probably -- that's almost like a walk in the park.

Dkt. No. 24-4 at 26. The prosecutor later stated: "I mean, these are people who commit crimes to

get into prison, so they're not the most honest people in the world." *Id*. at 41.

The Court of Appeal concluded that although the prosecutor's comments were likely

improper, trial counsel was not ineffective:

> To the extent that the prosecutor expressed his personal opinion
> when he argued that all inmates are not trustworthy or honest, he
> committed misconduct. But trial counsel could have made a
> reasonable tactical decision not to object. "'Past criminal conduct
> involving moral turpitude that has some logical bearing on the
> veracity of a witness in a criminal proceeding is admissible to
> impeach ....' [Citation.]" (*People v. Smith* (2007) 40 Cal.4th 483,
> 512.) Trial counsel could have reasonably concluded that an
> objection would have prompted the prosecutor to focus more on
> defendant's prior convictions to impeach his credibility. Thus,
> defendant's ineffective assistance claim is unavailing.

*Alvarez*, 2018 WL 1101494, at *13.

Federal habeas courts reviewing a claim that counsel was ineffective for failing to object to improper statements at closing must be deferential to both counsel's decision not to object and the state court's conclusion that that decision was reasonable. *See Harrington*, 562 U.S. at 105. Failure of counsel to object during closing argument "generally does not constitute deficient performance", because "[a]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct." *Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015) (citation and internal quotation marks omitted). "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990).

As suggested by the Court of Appeal, defense counsel may have concluded that objecting would have done more damage to discredit Alvarez's testimony. Under *Strickland*, reasonable tactical decisions are usually unassailable. *Strickland*, 466 U.S. at 690-91; *see also Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) ("many lawyers refrain from objecting during opening statement and closing argument[.]") (citation omitted). In his traverse, Alvarez argues that the Court of Appeal invented a tactical reason for defense counsel absent any support in the record. While it does appear that the state appellate court engaged in speculation without any support in the record, Alvarez still cannot prevail on this claim, because he cannot overcome *Strickland*'s prejudice prong. That is, even assuming deficient performance on the part of defense counsel, Alvarez fails to show that he was prejudiced by counsel's deficient performance. *See Strickland*, 466 U.S. at 694 (petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (noting that prejudice "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").

While it is true that the credibility of Alvarez and the officers played a major role in this

case, this fact alone does not suggest that defense counsel's failure to object to the prosecutor's statements rendered the result of the trial unreliable. The jury was aware of Alvarez's past felony convictions and was aware of the significant discrepancies in the testimony. Both the prosecutor and defense counsel made repeated comments about the veracity of the witness's testimony. *See*, *e.g.*, Dkt. No. 24-4 at 32 (in which defense counsel stated: "they're [the corrections officers] not showing you the truth . . . [s]he wasn't telling you the truth"). In addition, the prosecutor's comments amounted to just one paragraph, and an additional sentence, of a nearly thirty-page closing argument and ten-page rebuttal. The court also gave the usual instruction that statements by attorneys are not evidence. Dkt. No. 13-1 at 14; *see Darden*, 477 U.S. at 182. And as discussed throughout this ruling, the evidence against Alvarez on each of the counts was overwhelming. On this record, then, Alvarez cannot prove that the prosecutor's comments on the credibility of inmates amounted to prejudice.

### C. Prosecutor Asking Alvarez to Comment on Truthfulness of Officers

Alvarez alleges that the prosecutor improperly asked him to comment on the credibility of the corrections officers and his counsel was ineffective in failing to raise an objection. The Court of Appeal summarized the facts about this claim as follows:

> On cross-examination, the prosecutor asked defendant if he had "[a]ny problem with" CO Thich. After referencing CO Thich's testimony which contradicted defendant's testimony, the prosecutor asked defendant, "So can you think of any reason why he would come in and make that up?"
>
> Later, the prosecutor asked defendant if he had any problems with CO Schlitz. Defendant responded that he did not and that he respected every CO. The prosecutor then asked, "Well, is it respecting an officer to come in and basically say that he lied about what he said?" Defendant answered, "It would be a lack of respect." The prosecutor stated that CO Schlitz testified that defendant admitted to owning the two knives found in the Bibles. Defendant agreed that this was CO Schlitz's testimony, but denied saying it. The prosecutor asked, "So you're saying that he's lying in here, and you've never said that." Defendant replied, "Yes."
>
> During closing argument, the prosecutor argued, "And [defendant] gets up and, you know, calls the corrections officers liars; tells you how they're planting evidence, not telling the truth."

*Alvarez*, 2018 WL 1101494, at *14.

> The Court of Appeal concluded that the prosecutor's questions were proper:

>> Here, defendant testified as a percipient witness and had personal knowledge of the events in the cell when CO Thich made his observations. He also had personal knowledge of whether he made a statement after CO Schlitz found the weapons in his Bibles. Since defendant's testimony was in conflict with that of the COs, the prosecutor properly sought to give him the opportunity to explain whether the COs were "intentionally lying or [were] merely mistaken." [*People v. Chatman*, 38 Cal.4th 344, 382 (2006).] Thus, trial counsel was not incompetent for failing to object to the prosecutor's questions and argument

*Alvarez*, 2018 WL 1101494, at *14.

Alvarez cites *United States v. Sanchez*, 176 F.3d 1213 (9th Cir. 1999), a Ninth Circuit case, which hold that it is misconduct for a prosecutor to ask a defendant if a government witness is lying. 176 F.3d at 1220-24. However, on habeas review, a state court's decision that runs counter to federal circuit law is insufficient to grant habeas relief. *Duhaime v. Ducharme,* 200 F.3d 597, 602–03 (9th Cir. 2000). Instead, the state court decision must run counter to clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Because there is no clearly established law on point, the Court of Appeal's decision was not contrary to or an unreasonable application of Supreme Court precedent.

Furthermore, even if the prosecutor's questions constituted misconduct, Alvarez was not prejudiced by his counsel's failure to object. *See Strickland*, 466 U.S. at 694. As discussed previously, there was strong circumstantial evidence that Alvarez attacked Santana with a weapon, resulting in near fatal injuries. There was also evidence that Alvarez possessed the weapons in the Bibles, given Schlitz's testimony. Therefore, even if the prosecutor committed misconduct, it is not reasonably probable that the result of the proceeding would have been different had counsel objected.

### D.  Prosecutor Vouching for Officers' Credibility

Alvarez argues that the prosecutor's statements to the jury vouching for the credibility of the corrections officers was misconduct and defense counsel was ineffective in failing to object.

The Court of Appeal summarized the relevant facts and rejected the claim as follows:

> The prosecutor argued that CO Schlitz "has no animosity, no reason that we know to make anything up. In 23 years on the job, why?" He later argued, "Credibility of witnesses, whether to believe the witness or not, that's for the jury to determine. You're the final judges of who is telling you truth, who has a bias, and what story makes sense. [¶] Officers with many years experience versus a defendant with six felony convictions." He also argued, "[T]hese are people who commit crimes to get into prison, so they're not the most honest people in the world. So you turn around, and you throw down a bunch of corrections officers, who are just trying to do their jobs, trying to keep us safe from people like that." The prosecutor stated that it was "disrespectful" to accuse COs of "planting evidence and lying."
>
> . . .
>
> Here, CO Schlitz testified he had worked as a correctional officer for 23 years and defendant testified that he did not know CO Schlitz. The prosecutor then argued that CO Schlitz was credible because he would not jeopardize his career by lying and he had no motive to lie about defendant's conduct. Thus, the prosecutor's argument regarding CO Schlitz's credibility was based on the evidence and reasonable inferences therefrom, not on his personal knowledge or belief. . . . Accordingly, since there was no prosecutorial misconduct as to these comments, trial counsel was not ineffective for failing to object to them.
>
> Regarding the prosecutor's comments that COs are more honest than inmates, the prosecutor engaged in misconduct to the extent he expressed his personal opinion. As previously stated, trial counsel could have reasonably concluded that objections to these comments would have resulted in the prosecutor focusing on defendant's prior felony convictions. Accordingly, defendant has failed to show trial counsel was incompetent as to these comments.

*Alvarez*, 2018 WL 1101494, at *15.

The United States Supreme Court has held that vouching presents two dangers: (1) the prosecutor's comments may suggest that evidence not presented to the jury supports the charges against the defendant, and (2) the prosecutor's personal assurances may induce the jury to distrust its own view of the evidence by placing the prestige of the government behind the witness. *United States v. Young*, 470 U.S. 1, 18-19 (1985) (citation omitted). In considering vouching claims, a prosecutor's comments or argument must be evaluated in the context of the entire trial and the specific context in which they were made. *See Greer v. Miller*, 483 U.S. 756,

765-67 (1987). However, the scope of federal review of prosecutorial conduct in state criminal trials is narrow. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The Ninth Circuit has emphasized that, "under *Darden*, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness." *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). Habeas relief is only warranted where a prosecutor's "comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

The testimony of Schlitz and Alvarez were in direct conflict as to whether Alvarez had made a statement about the two weapons in the Bibles. Because of that contradiction, the prosecutor could properly argue about the credibility of these witnesses, based on the evidence presented to the jury. *See Trevino*, 419 F.3d at 902 (holding that where credibility is at issue, it is not improper to argue one side is not telling the truth). The prosecutor's statements that Schlitz was more credible than Alvarez were based on the evidence that Schlitz was a corrections officer for 23 years, did not know Alvarez and, therefore, had no motive to lie and risk jeopardizing his career. Because the prosecutor did not commit misconduct, counsel could not have been ineffective in failing to object. *See Rupe*, *supra*, 93 F.3d at 1445.

As to the prosecutor's general claim that corrections officers are more truthful than inmates, even assuming error on the part of defense counsel in failing to object, Alvarez fails to prove prejudice. *Strickland*, 466 U.S. at 694. The comments were only a minor part of an otherwise lengthy closing argument. And, as noted above, the trial court instructed the jurors that their decision was to be made based on the evidence alone, and that the arguments of counsel were not evidence. Regarding witness testimony, the court specifically instructed:

> You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have. You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe. In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. . . ."

Dkt. No. 13-1 at 15.

Further, as discussed throughout this ruling, the evidence against Alvarez was exceedingly strong. The Court of Appeal did not unreasonably reject this *Strickland* argument.

### E.  Prosecutor's Questions Implying Alvarez was in a Gang

Alvarez argues that the prosecutor's statements implying he was part of a gang constituted misconduct, and counsel was ineffective in failing to object. The Court of Appeal summarized the relevant facts and denied the claim as follows:

> During cross-examination of defendant, the prosecutor told him that he and Perez started the fight and that they "were sending a message to Acosta. It was a 'hard check,' wasn't it?" Defendant responded, "I don't know." The prosecutor then asked, "You don't know if that was a hard check that you and Perez laid on Acosta?" Defendant replied, "I wasn't checking anyone." After the prosecutor asked defendant who ordered him and Perez to attack Acosta, the trial court sustained defense counsel's objection. The following exchange occurred: "Q [prosecutor] You've learned the ins and outs of prison, haven't you? [¶] A [defendant] I don't know ins and outs. [¶] Q Well, isn't it true that there are people that they call 'shot callers'? [¶] A You know more than I do. [¶] Q People on the blocks who run the block, and they are the ones who order people to be assault? [¶] A No, not that I know of. [¶] Q That doesn't happen? [¶] A Well, I frequently see people fighting, but I don't know the reasons."

> "'It is improper for a prosecutor to ask questions of a witness that suggest facts harmful to a defendant, absent a good faith belief that such facts exist.'" (*People v. Osband*, 13 Cal. 4th 622, 695 (1996)).

> The prosecutor's questions strongly implied that defendant was a gang member. Defendant argues that since there is nothing in the record suggesting that defendant had any connection to a gang or that he assaulted Acosta with Perez under orders from a shot caller, the prosecutor committed misconduct. But defendant has failed to establish that trial counsel was incompetent for failing to object. The prosecutor's questions were brief and did not expressly refer to a gang. Moreover, defendant denied "checking" anyone or knowing the meaning of "shot callers." Thus, trial counsel could have reasonably concluded that an objection would have emphasized this portion of defendant's testimony.

*Alvarez*, 2018 WL 1101494, at *16.

As indicated by the Court of Appeal, the challenged comments were brief, did not specifically reference a gang, and Alvarez made clear that the prosecutor's questions were

unfounded. Further, given the ambiguity of the word "shot caller" and because Alvarez denied knowing what a shot caller was, counsel could reasonably have concluded that objecting would have drawn the jury's attention to this line of questioning. *See Dubria v. Smith*, 224 F.3d 995, 1004 (9th Cir. 2000) (given ambiguity of questions, reasonably competent attorney could have refrained from objecting). Thus, the Court of Appeal did not unreasonably conclude that defense counsel's performance was not deficient. *See Strickland*, 466 U.S. at 687-88. Even assuming, however, that counsel should have objected, Alvarez fails to establish prejudice. *See id.* at 694. The evidence of the incident in the prison yard was strong — two officers testified to seeing Alvarez and Perez making punching or stabbing motions at Acosta, who did not appear to be fighting back. Two weapons were also found at the scene. And, as stated previously, the Court instructed the jury that anything said by the attorneys was not evidence. Given the brief questions, the strong evidence of guilt, and the curative instruction, it is not reasonably probable that the result of the trial would have been different had counsel objected. The state court's denial of this claim was not objectively unreasonable.

### F.   Misstatement of Law on Premeditation and Deliberation

Alvarez claims the prosecutor misstated California law on premeditation and deliberation and that he used misleading analogies to explain his statement of the law. Alvarez argues that defense counsel was ineffective in failing to object. The Court of Appeal undertook a detailed analysis of the law and concluded that the prosecutor did not misstate California law nor were the analogies misleading. *See Alvarez*, 2018 WL 1101494, at *17-19. The court further explained: "[s]ince the prosecutor did not engage in misconduct in his argument to the jury regarding premeditation and deliberation, trial counsel did not render ineffective assistance when he failed to object." *Id.* at 19.

A state court's interpretation of state law, including on direct appeal of the challenged conviction, binds a federal court adjudicating a habeas corpus proceeding. *Bradsaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Insofar as the prosecutor did not misstate the law, counsel was not ineffective in failing to object. *See Rupe*,

*supra*, 93 F.3d at 1445. Furthermore, the jury was instructed as follows: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." Dkt. No. 13-1 at 17. Because this instruction mitigated any possible harm from the prosecutor's statements, Alvarez fails to show prejudice. *See Strickland*, 466 U.S. at 694.

## CONCLUSION

For the foregoing reasons, the petition is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of the respondent, terminate Docket No. 42 and close the file.

**IT IS SO ORDERED.**

Dated: May 18, 2022

_____
VINCE CHHABRIA
United States District Judge